UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JERROLD SCHWARTZ,                                           06 Civ. 9390 (RJH)

                    Plaintiff,                    **MEMORANDUM OPINION
AND ORDER**

        - against -

ROBERT DENNISON, et al.,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

       Plaintiff Jerrold Schwartz brings suit under 42 U.S.C. § 1983 for injunctive and

declaratory relief and monetary damages against various members of the New York State

Department of Correctional Services and New York State Division and Board of Parole

alleging due process violations in connection with the denial of his parole hearing.

Defendants move to dismiss the complaint pursuant to Rules 12(b)(6) and 12(b)(1) of the

Federal Rules of Civil Procedure.  For the reasons that follow, defendants' motion is

GRANTED.

## BACKGROUND

       The facts, as stated in the Complaint, are as follows.  Defendants, sued in their

personal and official capacity, include: Robert Dennison, Chairman of the New York State

Division of Parole ("DOP") and Board of Parole ("BOP"); Martin Cirincione, executive

director of the DOP[1]; Vanessa Clark, Edward R. Mevec, Marietta Gailor, R. Guy Vizzie,

Thomas Grant, and Walter William Smith, Parole Board Commissioners who either issued the

original decision of the BOP denying plaintiff parole, or reviewed that decision in an appellate

---

[1] In their moving papers, defendants suggest that Cirincione is in fact the Executive Deputy Commissioner of the
New York State Division of Criminal Justice Services.

capacity; Glenn S. Goord, Commissioner of the New York State Department of Correctional Services ("DOCS"); and James V. Granger, director of DOCS Office of Guidance and Counseling.  (Compl. ¶¶ 4–8.)

Plaintiff, now forty-eight years old, served as a Boy Scout troop leader from 1980 through 2001.  Plaintiff was incarcerated pursuant to an August 23, 2002 judgment of the New York Supreme Court, New York County, after pleading guilty to two counts of Sodomy in the Third Degree.[2]  (Compl. ¶ 12.)  Plaintiff was sentenced to two consecutive terms of one and one-third to four years for an aggregate sentence of two and two-thirds to eight years in prison, with an initial parole eligibility date at the completion of his minimum sentence in April 2005.  (Compl. ¶¶ 2, 12.)  The criminal conduct underlying plaintiff's sentence involved oral sex with a fifteen-year old male who was a member of his scout troop.  (Compl. ¶¶ 13–15.)  At plaintiff's initiative, all inappropriate contact between plaintiff and the complainant ceased in late 1996, and he continued to live in a law-abiding manner until his arrest in July 2001.  (Compl. ¶¶ 17–19.)  Plaintiff is a first-time offender and had no criminal record apart from this offense.  (Compl. ¶ 16.)  He further alleges that "[t]here is no evidence that plaintiff's unlawful conduct was anything but an aberration from his otherwise law abiding behavior."  (Compl. ¶ 22.)

Plaintiff entered the custody of DOCS on September 12, 2002.  (Compl. ¶ 25.)  Beginning in mid-2003, nearly two years prior to plaintiff's first scheduled appearance before the Parole Board, he sought entry into the DOCS Sex Offender Counseling Program ("SOP"), a six month rehabilitative program.  (Compl. ¶ 28.)  By letter dated October 14, 2003, he was

---

[2] There is some dispute as to whether plaintiff was convicted of two or four counts.  (Compl. ¶ 12.)  A decision in an Article 78 proceeding in state court that has since been vacated as moot found that plaintiff was convicted of two counts.  *Schwartz v. Dennison*, No. 115789/05, 2006 N.Y. Misc. LEXIS 4148, at *24–*25 (N.Y. Sup. Ct. Apr. 18, 2006).  This dispute is not relevant to the outcome of this Opinion.

assured by defendant Granger that he would be able to complete the program before his parole hearing date.  (Compl. ¶ 29.)  It was not until December 2004, less than six months prior to his first scheduled appearance before the Parole Board, that he was placed in the SOP, and as a result, he was unable to complete the program before his parole hearing.  (Compl. ¶¶  30–31.)  Nonetheless, in February 2005, defendant Goord issued plaintiff a Certificate of Earned Eligibility ("CEE") under New York Correctional Law § 805, indicating that he had successfully participated in a specially designed program of work and treatment and, if other conditions are met, entitling him to parole unless the Board found a "reasonable probability" that if released, "he will not live and remain at liberty without violating the law and that his release is not compatible with the welfare of society."  (Compl. ¶ 33); N.Y. Correctional Law § 805.

Plaintiff came before the Parole Board on April 13, 2005, after completing his minimum sentence.  (Compl. ¶ 36.)  At the hearing, in addition to the CEE, plaintiff: offered a letter from his treating psychiatrist, an expert in the field of sexual offenders, opining that there was not a "reasonable probability" that plaintiff would violate the law if released and that his release was not incompatible with the welfare of society; presented numerous letters from community members supporting his application; demonstrated insight into and expressed remorse for his conduct; represented that he had committed no disciplinary infractions while incarcerated; and proposed a release plan including offers of employment and caring for his 76-year-old mother.  (Compl. ¶¶ 26, 34, 37–38, 42.)

At the conclusion of the hearing, plaintiff was denied parole release and ordered to be held for another 24-month period, at the end of which he would be reconsidered for parole release.  The Board stated in relevant part as follows:

>Parole is denied.  You currently serve an aggregate term of two
>years eight months to eight years upon consecutive sentences
>for multiple counts of sodomy in the third degree.  Over the
>course of months in 1996 you engaged in repeated acts of
>sodomy against a young male victim, approximately fifteen
>years old, consisting of mouth to penis contact; the abuse
>occurred while the victim was a boy scout and you a scout
>leader.  The Panel has concern about the harmful affects [sic] of
>your action upon this vulnerable victim.  You stand to benefit
>from completion of the Sex Offender Counseling Program.[3]
>
>Therefore, while the Panel notes your receipt of an Earned
>Eligibility Certificate and overall positive adjustment as an
>inmate, both in terms of discipline and willingness to program,
>your programming progress is not yet commensurate with the
>harm inflicted and the Panel concludes that if you are released
>at this time there exist [sic] a reasonable probability that you
>will not live and remain at liberty without further violation of
>the law.  The vulnerable nature of the victim makes your release
>contrary to the best interest of the community at this time.

(Compl. ¶ 47.)  Thereafter, plaintiff unsuccessfully appealed the Board's decision.  (Compl.

¶¶ 49–50.)  In its statement of findings, the Appeals Unit concluded that issuance of a CEE

"does not automatically entitle [a prisoner] to release" and that plaintiff would benefit from

completion of the SOP.[4]  (Compl. ¶ 50.)

In November 2005, plaintiff instituted an Article 78 proceeding in state court

challenging the ruling of the Board as arbitrary and capricious and in violation of the Board's

own guidelines.  (Compl. ¶ 55.)  On April 18, 2006, Justice Alice Schlesinger annulled the

Board's determination and ordered that BOP provide plaintiff with a de novo hearing at the

earliest possible date.  *Schwartz v. Dennison*, No. 115789/05, 2006 N.Y. Misc. LEXIS 4148,

at *28 (N.Y. Sup. Ct. Apr. 18, 2006).  Justice Schlesinger found that the Board failed to rebut

---

[3] At the time of the hearing, plaintiff had only two weeks left in the six month SOP, and as noted, had already
received a CEE indicating that he had "successfully participated" in the SOP.  *See Schwartz*, 2006 N.Y. Misc.
LEXIS 4148, at *23.
[4] At the time of the Appeals Unit decision, plaintiff had, in fact, completed the Sex Offender Program.  *See
Schwartz*, 2006 N.Y. Misc. LEXIS 4148, at *23–*24.

the presumption of parole release found in N.Y. Correctional Law § 805 for recipients of CEE's who have completed their minimum terms.  *Id.* at *23 ("An examination of the Parole Board decision reveals that it lacks a rational basis and fails to rebut the presumption of release.")  BOP appealed this decision, which was automatically stayed pending appeal; plaintiff moved to vacate the stay so as to obtain a timely new parole hearing, but the motion was denied.  *Schwartz v. Dennison*, No. M-3363, 2006 N.Y. App. Div. LEXIS 10395 (N.Y. App. Div. Aug. 24, 2006).  The New York Appellate Division had not yet decided the merits of plaintiff's appeal by the time of his next regularly scheduled parole hearing in February 2007.  At that hearing, plaintiff was again denied parole.  Since plaintiff had received a de novo hearing, the Appellate Division dismissed the appeal as moot, and noted, in any event, that the petition should have been dismissed for improper venue.  *Schwartz v. Dennison*, 833 N.Y.S.2d 386, 387 (N.Y. App. Div. 2007).

Plaintiff further alleges that evidence acquired after the first Article 78 proceeding reveals a practice and policy of preventing sex offenders from meeting the "standards and requirements for parole release" until after their first appearance before the Parole Board by denying them timely entry into the treatment program.  (Compl. ¶ 56.)  According to plaintiff, the State's rationale is that parole release of sex offenders prior to their conditional release date, a period twice the length of the prisoner's minimum sentence, is "statistically unlikely," and therefore delayed entry into the treatment program (due to a long wait list) was adequate.  (*Id.*); *Schwartz v. Dennison*, No. 115789/5, 2006 N.Y. Misc. LEXIS 3910, at *2–*3 (N.Y. Sup. Ct. Nov. 17, 2006).

Plaintiff has stated five causes of action against defendants, all brought under 42 U.S.C. § 1983[5] and based on the Due Process Clause of the Fourteenth Amendment.  Plaintiff alleges that defendants violated his due process rights by: failing to implement and ignoring state law entitling recipients of CEE's to presumptive release; using irrational and unreasonable procedures at plaintiff's parole hearing; improperly denying plaintiff parole; and withholding timely entry into a required treatment program.  Plaintiff seeks a declaration that defendants' policy of ignoring state requirements is unconstitutional and that state law creates in recipients of CEE's a legitimate expectation of parole release; an affirmative injunction requiring BOP to provide plaintiff with a new parole hearing "that comports with the law"; and monetary relief.

## STANDARD OF REVIEW

When considering a motion to dismiss under Rule 12(b)(6), the Court "must accept as true the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff."  *Bolt Elec., Inc. v. City of New York*, 53 F.3d 465, 469 (2d Cir. 1995) (citations omitted).  Pursuant to Fed. R. Civ. P. Rule 8(a), the complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); *see also Conley v. Gibson*, 355 U.S. 41, 47 (1957) (complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.").  The complaint "does not need detailed factual allegations," yet it "requires more than labels and conclusions, and a formalistic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964–65 (2007).  Rather, the "[f]actual allegations must be enough

---

[5] 42 U.S.C. § 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

to raise a right to relief above the speculative level."  *Id.* at 1965; *see also Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir. 2007) (plaintiff must "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible.").

The Court is generally limited to "the factual allegations in [the] complaint, documents attached to the complaint as an exhibit or incorporated in it by reference, matters of which judicial notice may be taken, or documents either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied in bringing suit."  *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

## DISCUSSION

Defendants move to dismiss the complaint on the grounds that: (1) the Court has no jurisdiction to review a state court proceeding under the *Rooker-Feldman* doctrine or should abstain from hearing this action under the *Younger* abstention doctrine; (2) plaintiff failed to exhaust his administrative remedies as to defendants Goord and Cirincione; (3) defendants are entitled to Eleventh Amendment immunity from claims for monetary damages against them in their official capacity; (4) BOP defendants are entitled to absolute immunity and all defendants are entitled to qualified immunity; and (5) plaintiff is not entitled to injunctive or declaratory relief.  The Court addresses the first four arguments in turn and does not reach the fifth.[6]

---

[6] While neither party has briefed the issue, and the Court does not rely on it in reaching its decision, much of the relief plaintiff seeks against the Division and Board of Parole would appear to be barred by the *Heck* doctrine. This doctrine prevents an inmate from attacking "the fact or length of the inmate's confinement without first showing that the conviction or sentence has been reversed or otherwise invalidated."  *Odom v. Pataki*, No. 00 Civ. 3727 (DC), 2001 U.S. Dist. LEXIS 2790, at *7–*8 (S.D.N.Y. Mar. 15, 2001) (citing *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994)).  In the context of this case, this would bar plaintiff from seeking a declaratory judgment overturning or ruling unconstitutional a parole determination, an order requiring the Parole Board to take specific actions with respect to plaintiff's parole, or monetary damages for its past decision.  *See Mathie v. Dennison*, No. 06 Civ. 3184 (GEL), 2007 U.S. Dist. LEXIS 60422, at *7–*14 (S.D.N.Y. Aug. 16, 2007) (Lynch,

I.       **Rooker-Feldman Doctrine**

Under the Rooker-Feldman doctrine, "federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments."  *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005) (citing, inter alia, *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)).  The Rooker-Feldman doctrine "'is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'"  *Hoblock*, 422 F.3d at 85 (quoting *Exxon Mobil*, 544 U.S. at 284).  The mere pendency of a state court proceeding examining the same issues does not deprive a federal court of jurisdiction.  *See Exxon Mobil*, 544 U.S. at 292 ("[T]he pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." (citations and internal quotation marks omitted)).

Defendants argue that this Court is being called upon to review the determination made in the Article 78 proceeding and the decision of the Appellate Division vacating that decision.  This is clearly not the case.  The Court is neither being asked to overturn the Appellate Division's decision vacating Justice Schlesinger's annulment of the parole hearing as moot, nor to declare that decision unconstitutional.  Indeed, the instant lawsuit and this

---

J.).  However, to the extent he has standing, plaintiff may still assert injunctive relief preventing the Parole Board from applying unconstitutional procedures to future parole determinations.  It would appear that plaintiff does not have standing to seek injunctive relief against an allegedly unconstitutional policy of denying parole to inmates who have been prevented from completing a Sex Offender Program, even if they have received a Certificate of Earned Eligibility, since it is undisputed that plaintiff has now completed the program and received a CEE.  Accordingly, he could never be subject to any unconstitutional injury in the future.

motion were filed before the Appellate Division had rendered its adverse decision. Instead, plaintiff asks the Court to rule on the constitutionality of the parole board's decision and decision-making process denying him parole, and the alleged policy of denying timely entry into the SOP. This alleged injury was not caused by an adverse state court decision. The Rooker-Feldman doctrine has no applicability here and does not deny the Court of jurisdiction to hear this matter. *See Ponterio v. Kaye*, No. 06 Civ. 6289 (HB), 2007 U.S. Dist. LEXIS 4105, at *19 (S.D.N.Y. Jan. 22, 2007) (declining to apply Rooker-Feldman doctrine where plaintiff complained of state agency's allegedly unconstitutional decision that was subsequently "ratified" by state court).[7]

## II.    Exhaustion of Administrative Remedies as to DOCS Defendants

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This requirement "applies to all inmate suits about prison life, whether they involve general or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). A prisoner must completely exhaust the administrative remedies to the highest level for each claim he seeks to present. *See Santiago v. Meinsen*, 89 F. Supp. 2d 435, 440 (S.D.N.Y. 2000). Moreover, a

---

[7] Defendants also argue that *Younger* abstention bars plaintiff's claims from consideration, as federal courts should generally refrain from interfering in ongoing state proceedings that implicate important state interests and afford plaintiff an adequate opportunity to raise federal constitutional claims. *See Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 74–75 (2d Cir. 2003) (citing *Younger v. Harris*, 401 U.S. 37 (1971)). Resolution of this case does not require interference with ongoing state proceedings, as state proceedings are no longer "ongoing." Furthermore, plaintiff has exhausted his remedies in state court, as required by *Younger*, and now properly comes before this Court asserting constitutional harms. *See Kirschner v. Klemons*, 225 F.3d 227, 234 (2d Cir. 2000). In such a case, no abstention is necessary. *See Ponterio v. Kaye*, 2007 U.S. Dist. LEXIS 4105, at *19–*20 (declining to apply *Younger* where state proceedings were no longer ongoing and plaintiff had exhausted his state-court remedies). Finally, "application of the *Younger* doctrine is inappropriate where the litigant seeks money damages for an alleged violation of § 1983," as here. *Rivers v. McLeod*, 252 F.3d 99, 101–102 (2d Cir. 2001). Therefore, the Court rejects defendants' argument that it must abstain from hearing plaintiff's claims.

claim must be completely exhausted prior to commencing suit.  It is insufficient to take only limited steps towards exhaustion before commencing the suit, or even to exhaust a claim entirely during the pendency of the case.  *See Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001) ("Subsequent exhaustion after suit is filed therefore is insufficient."), overruled on other grounds by *Porter*, 534 U.S. 516 (2002).  In the context of the New York State prison system, this requires that the grievance be appealed through the three tiers of the Inmate Grievance Program to the Central Office Review Committee.  *See Davis v. New York*, 492 F. Supp. 2d 331, 334 (S.D.N.Y. 2007).

Defendants argue that the Complaint against DOCS defendants Goord and Granger must be dismissed because plaintiff failed to file any grievance related to his delayed placement in the SOP or preventing him from meeting the standards of parole release prior to his first parole hearing, let alone appeal such a grievance to the highest level.  Plaintiff's Complaint contains no allegations as to whether and how plaintiff exhausted his administrative remedies.[8]  Plaintiff correctly notes that the Supreme Court has recently held that exhaustion of administrative remedies is an affirmative defense, and not a pleading requirement.  *See Jones v. Bock*, 127 S. Ct. 910, 919 (2007).  While an "affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6) . . . if the defense appears on the face of the complaint," the Complaint merely omits any reference of grievances, it does not state that none were filed and appealed.  *Pani v. Empire Blue Cross*

---

[8] Defendants additionally submit two sworn affidavits suggesting that plaintiff has failed to exhaust his administrative remedies.  However, these affidavits may not be considered on a Rule 12(b)(6) motion without converting the motion to one for summary judgment.  *See Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) ("[W]hen matters outside the pleadings are presented in response to a 12(b)(6) motion, a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment." (citations and internal quotation marks omitted)).  The court declines to do so, and excludes these affidavits.

*Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998).  Thus, it cannot be said that the failure to exhaust administrative remedies is apparent on the face of the Complaint.

Plaintiff further argues, essentially conceding in his opposition that he did not exhaust (Pl.'s Opp'n 4), that exceptions to the exhaustion requirement apply in this case.  *See Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004) (exceptions where (1) administrative remedies are not available to inmate; (2) defendants have forfeited exhaustion defense by failing to raise or preserve it or are estopped from asserting it; or (3) there are "special circumstances" justifying the failure).  Specifically, plaintiff argues that because his claims concern parole policies and decisions that cannot be remedied through the DOCS Internal Grievance Program, no administrative remedy is available.  At the very least, it was reasonable for plaintiff to believe this was the case.  *See Giano v. Goord*, 380 F.3d 670, 679 (2d Cir. 2004) (plaintiff's reasonable, but mistaken interpretation of DOCS regulations concerning grievances constituted "special circumstance" justifying failure to exhaust).

Plaintiff appears to be painting himself into a corner with this argument.  If his Complaint truly only challenges the policies of DOP and decisions of BOP, then DOCS defendants Goord and Granger would not be proper defendants to this action.  However, the Complaint also alleges that he was denied entry into the DOCS-administered SOP in time for him to complete the program prior to his first scheduled appearance before the Parole Board. (*See* Compl. ¶¶ 28–31.)  To the extent that placement in treatment programs is a function of DOCS, then failure to do so would be the proper subject of the Internal Grievance Program.[9] Thus, the exhaustion requirement will apply to any claim brought by plaintiff against DOCS defendants concerning denial of timely entry into the SOP.  Nonetheless, because as explained

---

[9] Indeed, evidence relied on by plaintiff in challenging his parole decision in state court included a DOCS response to just such a grievance.  *Schwartz*, 2006 N.Y. Misc. LEXIS 3910, at *3.

*supra* exhaustion of administrative remedies is not a pleading requirement, the Court does not yet base its dismissal of the Complaint as against any defendants on failure to exhaust.

## III.    Eleventh Amendment

Both parties agree that the Eleventh Amendment bars plaintiff from seeking monetary damages from defendant state officials in their official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985).  Thus, the claims seeking monetary damages against defendants in their official capacity are hereby dismissed.  However, plaintiff sues each defendant in both his personal and official capacity.  (Compl. 1.)  While "the Eleventh Amendment bars recovery against an employee who is sued in his official capacity, [it] does not protect him from personal liability if he is sued in his 'individual' or 'personal' capacity." *Farid v. Smith*, 850 F.2d 917, 921 (2d Cir. 1988) (citing *Graham*, 473 U.S. at 166–67).  Therefore, plaintiff's claims seeking monetary damages against defendants in their personal capacity are not barred by the Eleventh Amendment.

## IV.    Absolute Immunity

Defendants move to dismiss the Complaint as against defendant Dennison and all six Parole Board Commissioners on the grounds that they are entitled to absolute immunity.  The Second Circuit has squarely held that "parole board officials, like judges, are entitled to absolute immunity from suit for damages when they serve a quasi-adjudicative function in deciding whether to grant, deny or revoke parole." *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999).  Such "[a]bsolute immunity bars not only [plaintiff's] § 1983 claim for damages but also his claim for injunctive relief." *Id.* at 761.  Plaintiff argues that he is not suing Dennison and the Commissioners for conduct at the parole hearing, but rather for the role they played in creating an allegedly unconstitutional policy.  Clearly, this is not the case with the

Commissioners.  The only substantive allegations about the Commissioners identify whether they were involved in the original hearing or appellate proceeding and state that they "were responsible for making, and did make in plaintiff's case, decisions regarding" parole release. (Compl. ¶¶ 6, 36, 51.)  Their decision to deny plaintiff parole clearly falls within the scope of absolute immunity; therefore, the Complaint is dismissed as against Clark, Smith, Mevec, Gailor, Vizzie, and Grant.  Dennison, in contrast, did not preside over plaintiff's parole hearing, nor did he decide whether to grant, deny, or revoke plaintiff's parole.  Instead, plaintiff argues that he was responsible for an unlawful policy implemented by BOP. Therefore he is not entitled to absolute immunity as a Parole Board official.

## V.   Qualified Immunity

The doctrine of qualified immunity shields state officials from personal liability if their actions did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This requires a two-step inquiry: first, the Court examines whether the plaintiff's factual allegations "show the [official's] conduct violated a constitutional right."  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If plaintiff can show defendant violated a constitutional right, "the next, sequential step is to ask whether the right was clearly established," *id.*, and, if so, whether it was objectively reasonable for the defendant to believe his or her acts did not violate plaintiff's rights.  *See Anderson v. Creighton*, 483 U.S. 635, 638 (1987); *In re State Police Litig.*, 88 F.3d 111, 123 (2d Cir. 1996).  If either the right was not clearly established, or it was objectively reasonable for the defendant to believe the acts did not violate plaintiff's rights, the defendant is entitled to qualified immunity.[10]

---

[10] A traditional qualified immunity defense may be asserted on a Rule 12(b)(6) motion based on the facts appearing on the face of the complaint.  *See McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).  However,

The first inquiry considers whether plaintiff has adequately alleged that defendants violated his constitutional rights.  Plaintiff's primary claims are that defendants violated his due process rights by: (1) failing to give effect to the presumption of parole release created by N.Y. Correctional Law § 805, both in plaintiff's hearing and as a Division of Parole policy and practice; (2) establishing a policy denying parole to sex offenders; and (3) failing to permit plaintiff into the SOP in time to complete the program before his first scheduled appearance before the Parole Board.

### A.    N.Y. Correctional Law § 805

"In order for a state prisoner to have an interest in parole that is protected by the Due Process Clause, he must have a legitimate expectancy of release that is grounded in the state's statutory scheme," not merely a possibility nor statistical probability of release.  *Barna v. Travis*, 239 F.3d 169, 170 (2d Cir. 2001).  "The New York parole scheme is not one that creates in any prisoner a legitimate expectancy of release."  *Id.*  This is because New York's general parole provisions "do not establish a scheme whereby parole shall be ordered unless specified conditions are found to exist."  *Boothe v. Hammock*, 605 F.2d 661, 664 (2d Cir. 1979); *see also* N.Y. Exec. Law § 259-i(2)(c)(A).

However, plaintiff does not argue that his legitimate expectation of release derives from New York parole provisions generally, but instead that it arises under N.Y. Correctional Law § 805 in connection with the issuance of a Certificate of Earned Eligibility.  N.Y. Correctional Law § 805 provides in relevant part:

> [A]n inmate who is serving a sentence with a minimum term of not more than eight years and who has been issued a certificate

---

because the question of whether the official's conduct was reasonable "necessarily involves a fact-specific inquiry, [i]t is generally premature to address" that step of the qualified immunity defense on a 12(b)(6) motion. *Bernstein v. City of New York*, No. 06 Civ. 895 (RMB), 2007 U.S. Dist. LEXIS 39286, at *29–*30 (S.D.N.Y. May 24, 2007).

> of earned eligibility, *shall* be granted parole release at the
> expiration of his minimum term . . . *unless* the board of parole
> determines that there is a reasonable probability that, if such
> inmate is released, he will not live and remain at liberty without
> violating the law and that his release is not compatible with the
> welfare of society.

(emphasis added).  Several New York courts have found, relying on a Supreme Court case

analyzing a similarly worded parole statute, *see Greenholtz v. Inmates of Nebraska Penal and

Correctional Complex*, 442 U.S. 1, 12–13 (1979), that this law creates a liberty interest which

entitles inmates to some due process protections in the consideration of their parole

applications.  *See Gittens v. Thomas*, No. 02 Civ. 9435 (JSM), 2003 U.S. Dist. LEXIS 9087,

at *2 (S.D.N.Y. May 30, 2003); *Walters v. Ross*, No. CV-92-2290, 1992 U.S. Dist. LEXIS

19909, at *8 (E.D.N.Y. Dec. 21, 1992).  This Court agrees that N.Y. Correctional Law § 805

creates a protected liberty interest.

Having found a protected liberty interest, the Court must next consider what process is

due in protecting that interest and whether defendants' actions concerning the parole release

decision accorded him such process.  In *Greenholtz*, the Court held that an inmate with a

protected liberty interest created by the parole statute such as N.Y. Corrections Law § 805 is

entitled to "an opportunity to be heard, and when parole is denied [the Parole Board] informs

the inmate in what respects he falls short of qualifying for parole."  *Greenholtz*, 442 U.S. at

16.  This process, the Court continued, "affords the process that is due under these

circumstances.  The Constitution does not require more."  *Id.*

Nonetheless, one circuit has found that an inmate with a liberty interest created by a

parole statute is additionally entitled to have the parole board determination supported by

"some evidence."  *See Biggs v. Terhune*, 334 F.3d 910, 915 (9th Cir. 2003) (applying "some

evidence" standard to parole decision where California parole statute created protected liberty

interest); *Jancsek v. Or. Bd. of Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987) (applying "some evidence" standard to parole decision setting release date after assuming without deciding that Oregon's parole statute created protected liberty interest).  The "some evidence" standard is derived from *Superintendent v. Hill*, where the Supreme Court held that "revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record."  472 U.S. 445, 454 (1985) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974)).  Application of this standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."  *Id.* at 455–56.

The "some evidence" standard has been applied in various other contexts in addition to disciplinary hearings revoking an inmate's good time credits.  It also applies to disciplinary hearings where an inmate or parolee is threatened with the revocation of probation, pre-parole release, or work release.  *See Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000).  For each of these circumstances, due process requires that the liberty interest be deprived only after a substantial evidentiary hearing.  In addition to a requirement that the ruling be supported by "some evidence," the following process is also due: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action."  *Hill*, 472 U.S. at 454.  The Court in *Hill* specifically noted that the "some evidence" standard "will not impose significant new burdens on proceedings within the

16

prison" because written statements explaining the evidence relied on were already required by due process.  *Id.* at 455.

The Court finds the "some evidence" standard to be inapplicable in the context of a typical parole hearing, even where the parole statute has created a protected liberty interest. Unlike disciplinary rulings based on an evidentiary record typically regarding a specific incident, a determination made after a parole hearing is "essentially an experienced prediction based on a host of variables." *Greenholtz*, 442 U.S. at 16.  In such a case, the Supreme Court has held that a Parole Board is not required "to specify the particular 'evidence' in the inmate's file or at his interview on which it rests the discretionary determination that an inmate is not ready for conditional release."  *Id.* at 15.  The Parole Board is not conducting an adversarial disciplinary hearing at which it examines evidence, nor does due process require it to.  It makes little sense then to ask a district court to review the evidence on which the Parole Board relied.  Due process requires only that the Parole Board state "in what respects [the inmate] falls short of qualifying for parole," not as an evidentiary prerequisite, but rather as "a guide to the inmate for his future behavior."  *Id.* at 16.

Therefore, the Court confirms what was stated in *Greenholtz*: an opportunity to be heard and a statement of the reasons for denial of parole "affords [all] the process that is due" where a parole statute creates a protected liberty interest.  *Id.*  Plaintiff does not contend that he was denied these procedural protections in his parole determination.  Indeed, he was afforded those procedural protections and more: he had an opportunity to be heard and present evidence at his hearing; the Parole Board offered statutorily recognized reasons for its denial; this determination was reviewed and affirmed by an appeals board; and finally, the determination was reviewed and initially reversed in an Article 78 proceeding before the

proceeding was dismissed as moot in light of plaintiff's second de novo parole hearing.  Nor

does plaintiff allege that the Board or Division of Parole has a policy of denying these

minimum procedural protections.  Instead, plaintiff's argument, both in his papers and at oral

argument, is that the Parole Board's decision was not supported by any evidence and therefore

constitutes a due process violation.  (Pl. Opp'n 9–10); *see also Schwartz*, 2006 N.Y. Misc.

LEXIS 4148, at *22 (finding that Parole Board conclusions were "perfunctory and

unsupported by the evidence in the record.").  But for the reasons stated *supra*, although a

lack of evidence may entitle plaintiff to relief in state court, it does not support a due process

claim.  *See Gittens*, 2003 U.S. Dist. LEXIS 9087, at *4 ("due process does not require the

courts to reexamine the factual determinations of the Board"); *cf. Walters*, 1992 U.S. Dist.

LEXIS 19909, at *9 (briefly examining reasons given for parole determination, but not

evidence relied on).  Therefore, the Court dismisses plaintiff's due process claims arising out

of the parole hearing.[11, 12]

**B.      Alleged Division of Parole Policy toward Sex Offenders**

---

[11] Plaintiff's claims against Dennison and Cirincione fail for the additional reason that he has failed to adequately allege their personal involvement.  *See Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004) (no § 1983 liability "merely because [defendant] held a high position of authority").  There are no allegations in the complaint from which it can be reasonably inferred that Dennison or Cirincione created, or allowed to continue, a policy of disregarding the presumption created by N.Y. Corrections § 805.  Moreover, even an allegation that defendants established a policy to misinterpret N.Y. Corrections Law § 805 would simply be too vague to state a claim of personal involvement on that basis.  *See, e.g., Covington v. Coughlin*, No. 93 Civ. 8372 (JSM), 1994 U.S. Dist. LEXIS 5467, at *7 (S.D.N.Y. Apr. 28, 1994) ("vague reference" to alleged unconstitutional policy insufficient to establish personal involvement).  Nor are there any allegations stating, let alone facts suggesting, that Dennison or Circincione were negligent in supervising the Parole Board Commissioners.

[12] Plaintiff's request for injunctive relief—a de novo parole hearing where the Board discusses, on the record, the detailed factual findings leading to their decision, and if it denies parole, provides a detailed statement of the facts and evidence relied on—fails for additional reasons.  As clearly held in *Greenholtz*, the Due Process Clause does not require that the Parole Board provide a detailed factual statement of reasons for denial, including specific reference to evidence relied on.  442 U.S. at 15–16.  As for a new hearing, plaintiff has already received a new hearing before the Parole Board since the violation of his due process rights alleged in the Complaint.  This renders moot his request for a new hearing.  Were the Court to find otherwise, it would be directly contradicting the holding of the New York Appellate Division and would raise serious concerns under the Rooker-Feldman doctrine.

While plaintiff's submissions are unclear on this point, he also appears to argue that he was arbitrarily denied parole due to a state policy to not grant parole to sex offenders. (*See* Pl.'s Opp'n 15–16 (citing *Graziano v. Goord*, No. 06 Civ. 280 (CLB), 2006 U.S. Dist. LEXIS 52556 (S.D.N.Y. July 17, 2006) (Brieant, J.)).) In *Graziano*, the district court concluded that an unwritten policy to deny parole to all violent offenders may violate due process. *Id.* at *24. Other courts in this Circuit have disagreed. *See Mathie v. Dennison*, No. 06 Civ. 3184 (GEL), 2007 U.S. Dist. LEXIS 60422 (S.D.N.Y. Aug. 16, 2007) (Lynch, J.); *Cartagena v. Connelly*, No. 06 Civ. 2047 (LTS) (GWG), 2006 U.S. Dist. LEXIS 65279, at *26 (S.D.N.Y. Sept. 14, 2006). Thus, in *Mathie*, while the court found an inmate to have a "federally-protected liberty interest . . . [in] not being denied parole for arbitrary or impermissible reasons," it concluded that a blanket policy to deny parole to violent felons was not arbitrary. *Mathie*, 2007 U.S. Dist. LEXIS 60422, at *15 (internal quotation marks and citations omitted). Rather, the Parole Board was entitled to place heavy emphasis on the severity of the crime in making parole decisions and doing so in that case was rational. This Court appreciates that the present case, unlike *Mathie*, involves a parole application under § 805 which entitles the inmate to the further constitutional protections of an opportunity to be heard and a statement of reasons for denial of parole. *See Greenholtz*, 442 U.S. at 16. However, consideration under § 805 does not provide any further protections with respect to the reasons given for denial of parole, other than that they be neither arbitrary nor impermissible.

The Court concludes that even if it existed, a BOP policy of denying parole to sex offenders would not violate the Due Process Clause. As in *Mathie*, the board is permitted to consider the nature and severity of the crime as a factor relevant to whether plaintiff is likely to commit further crime if released and whether his release is in the best interests of the

community.  Nor would the Board be acting outside its constitutional limits if it chooses to sharply curtail granting early parole to sex offenders.  *See Green v. Armstrong*, No. 98-3707, 1999 U.S. App. LEXIS 20207 (2d Cir. Aug. 20, 1999) ("Prisoners who have committed sex offenses can rationally be deemed more dangerous to society and, hence, less eligible for early release programs.").  While state law might limit the Parole Board from enacting a policy denying parole to sex offenders without satisfying its more rigorous burden under § 805, the Due Process Clause does not.  Such a claim "is best left to the New York courts." *Mathie*, 2007 U.S. Dist. LEXIS 60422, at *22 (internal quotation marks and citations omitted).[13]

### C.      Entry into Treatment Programs

Plaintiff alleges that regulations require that an inmate be placed in a treatment program at least eight months prior to his "earliest release date," which would be the date on which his minimum sentence has been served.  (Compl. ¶ 56.)  However, prison officials redefined "earliest release date" for sex offenders to mean "conditional release date," equal to twice the inmate's minimum sentence, apparently because there was a lengthy waiting list of offenders seeking entry into the SOP and it was "statistically unlikely" for sex offenders to be released before that point.  (*Id.*)  This allegation is supported in part by a second opinion of Justice Schlesinger finding evidence of a DOCS policy of "intentionally fail[ing] to place sex offenders in the required Sex Offender Program in sufficient time to allow them to complete the program before the earliest possible date of release."  *Schwartz*, 2006 N.Y. Misc. LEXIS

---

[13] Nor does plaintiff have a claim, even if he had standing to assert it, that a policy to deny parole to those inmates who had not yet completed the SOP, but had nonetheless received a CEE, violates due process.  *See supra* fn.6 (plaintiff does not to have standing to assert such a claim).  First, completion of a rehabilitative program is a statutorily acceptable consideration in denying parole.  Second, such a policy would not be arbitrary or inappropriate, as the Board could rationally find that those inmates who had not completed SOP posed a greater threat of committing future crimes, regardless of a DOCS determination of successful participation in such a program.  Finally, to the extent such a policy would be in violation of N.Y. Correctional Law § 805, the remedy is through a state court, not a constitutional claim.

3910, at *2–*3.  Furthermore, plaintiff alleges that certain inmates "must complete the S.O.P. to qualify for parole."  (*Id.*)  If true, this policy would deny a certain class of inmates the possibility of release upon completion of the minimum sentence issued by the state court judge and, plaintiff argues, is a violation of his due process rights.[14]  (Pl.'s Opp'n 10.)

A policy to deny timely entry into the SOP can only violate due process rights if timely entry into the SOP is a liberty interest protected by the Due Process Clause.  *See Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001) ("[T]o present a due process claim, a plaintiff must [first] establish that he possessed a liberty interest." (internal quotation marks and citations omitted)).  Unfortunately, neither party addresses this question.  Several Supreme Court cases define the contours of the analysis.  In *Sandin v. Connor*, 515 U.S. 472 (1995), the Court found that as applied to inmates, the Due Process Clause only protects against deprivation of state-created liberty interests that "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Id.* at 484.  The Court finds that the denial of entry into a non-medical treatment program, like provision of sack lunches instead of tray lunches, *Burgin v. Nix*, 899 F.2d 733, 735 (8th Cir. 1990), placement in a cell without an outlet, *Lyon v. Farrier*, 727 F.2d 766, 768–769 (8th Cir. 1984), or refusal to provide a paperback dictionary, *Spruytte v. Walters*, 753 F.2d 498, 506–508 (6th Cir. 1985), does not impose such a significant hardship in and of itself.

---

[14] It should be noted that plaintiff does not bring an equal protection claim based on the denial of timely entry into treatment programs to a specific class of inmates.  *See Graziano v. Goord*, No. 06 Civ. 280 (CLB), 2006 U.S. Dist. LEXIS 52556 (S.D.N.Y. July 17, 2006) (allowing class of inmates convicted of violent offenses to proceed on equal protection claim based on policy of disparate treatment under parole statute).  To state such a claim, plaintiff would have to show that the state had no rational basis for preventing sex offenders from entering into a treatment program in time to complete it before their first scheduled hearing before the Parole Board, while permitting other inmates to do so.  *But see Green v. Armstrong*, No. 98-3707, 1999 U.S. App. LEXIS 20207 (2d Cir. Aug. 20, 1999) (denying equal protection claim after holding that "the state can draw a legitimate distinction between inmates based on their past conduct.  Prisoners who have committed sex offenses can rationally be deemed more dangerous to society and, hence, less eligible for early release programs.").

However, timely entry into a treatment program in this case is directly tied to the possibility of parole, and requires the Court to consider cases where the inmate's interest in earlier release is implicated. *See Klos v. Haskell*, 48 F.3d 81, 87 (1995) ("While prison administrators of necessity retain broad discretionary authority over day-to-day administration of the prisons, their actions may be scrutinized more closely when they have the potential effect of reducing the amount of time which an inmate will spend in custody." (citations omitted)). In *Wolff v. McDonell*, the Supreme Court found that a state could create a protected interest in an inmates' retention of good-time credits that shortened the duration of their sentence. 418 U.S. at 557. Before revoking such credits, the Court required the state to comply with certain minimum procedures. *Id.* at 556. In contrast to the revocation of good time credits, while denying participation in a treatment program may deprive the possibility of early release, it does not *necessarily* extend an inmate's time in prison.

This distinction—whether the deprivation necessarily or only potentially affects sentence duration—is clearly important to whether the interest in avoiding that deprivation is protected by the Due Process Clause. Relying on this distinction, the Supreme Court in *Sandin* declined to find a protected liberty interest in not being put in disciplinary confinement where such discipline only potentially affected the duration of the inmates sentence, stating:

> Nor does [plaintiff's] situation present a case where the State's action will inevitably affect the duration of his sentence. Nothing in Hawaii's code requires the parole board to deny parole in the face of a misconduct record or to grant parole in its absence, even though misconduct is by regulation a relevant consideration. The decision to release a prisoner rests on a myriad of considerations. And, the prisoner is afforded procedural protection at his parole hearing in order to explain the circumstances behind his misconduct record. The chance that a finding of misconduct will alter the balance is simply too

> attenuated to invoke the procedural guarantees of the Due
> Process Clause.

*Sandin*, 515 U.S. at 487 (citations omitted); *see also Meachum v. Fano*, 427 U.S. 215, 229 n.8 (1976) (declining to afford relief on the basis that petitioner's transfer record might affect his future confinement and possibility of parole).

Certainly, like in *Sandin*, the successful completion of the SOP does not require the Parole Board to grant parole.  However, unlike in *Sandin*, plaintiff appears to allege that the failure to complete the SOP prevents the granting of parole.  (*See* Compl. ¶ 56.)  To some extent, this suggests that timely placement in a treatment program does necessarily and directly affect parole release, by precluding it as a possibility upon completion of the minimum sentence.  *Cf. Beebe v. Stommel*, No. 02-cv-01993-WYD, 2006 U.S. Dist. LEXIS 82668, at *24 (D. Colo. Nov. 13, 2006) (holding that "termination from state mandated sex-offender treatment" implicated a protected liberty interest because "Plaintiff has gone from eligible for parole to ineligible to parole").

The Court need not resolve the question of whether denial of an entry into a program to which an inmate is entitled by state law, and which is a prerequisite to parole, constitutes a due process violation.  Assuming plaintiff has a state-created liberty interest in the possibility of parole, there was no violation in this case.  While plaintiff failed to complete the SOP before his first appearance before the Parole Board, Commissioner Goord issued a Certificate of Earned Eligibility, which made plaintiff's parole release possible, indeed presumptive, as he clearly satisfied the statutory prerequisite for consideration of parole under N.Y. Correctional Law § 805.  While the Parole Board may have chosen to consider plaintiff's two weeks remaining in the Sex Offender Program as well as his CEE indicating successful participation in the program, plaintiff can hardly fault the DOCS defendants for this decision.

While plaintiff alleges a DOCS policy to prevent sex offenders from becoming eligible for parole, he, in fact, was eligible for parole under § 805. Therefore, he can assert no due process violation[15] and the Court dismisses his due process claim based on the alleged DOCS policy to deny sex offenders timely entry into the Sex Offender Program.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss [5] the Complaint is GRANTED in its entirety. The Clerk of the Court is directed to close the case.

SO ORDERED.

Dated: New York, New York
September 28, 2006

Richard J. Holwell
United States District Judge

---

[15] However, plaintiff may have a state claim that a policy preventing timely entry into the SOP violates the state statute or regulation requiring that inmates be placed in treatment programs at least eight months prior to the inmate's "earliest release date."

24